Filed 5/6/16  In re H.J. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.J., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D068936 |
| Plaintiff and Respondent, | (Super. Ct. No. CJ-1171) |
| v. | |
| A.J., et al., | |
| Defendants and Appellants. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Conditionally reversed in part for further Indian Child Welfare Act (ICWA) notification proceedings, and affirmed in part as to modification order.

Clare M. Lemon, under appointment by the Court of Appeal, for A.J., Defendant and Appellant.

Christopher Blake, under appointment by the Court of Appeal, for C.C., Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Appellants C.C. (Mother) and A.J. (Father) appeal a juvenile court order denying Mother's modification motion for return of their child, H.J. (the child), to her care. (Welf. & Inst. Code, § 388; all further statutory references are to this code unless noted.) Mother, joined by Father, first argues the court abused its discretion when it denied her motion for modification and then proceeded to the permanency planning hearing. (§§ 388, 366.26.)

The parents further contend reversal of the permanency planning judgment is necessary because the San Diego County Health and Human Services Agency (the Agency) did not adequately comply with the notice provisions of the ICWA. (25 U.S.C. § 1901 et seq.) After the court made a preliminary finding that the child was not an Indian child, the Agency was placed in possession of additional genealogical information from Mother's relatives, and it pursued additional notification procedures regarding her ongoing claim of her Native American heritage. However, the Agency failed to provide the court with the updated results when hearings resumed, which the parents argue failed to meet the notification standards of the ICWA.[1]

---

[1] Father's counsel filed a brief and letter joining in Mother's briefs on appeal. The child's counsel filed a letter joining in the Agency's respondent's brief.

2

The Agency argues no error occurred, or it was waived or invited by the parents. We conclude the parents' substantive contentions on modification lack merit, and there was no abuse of discretion in the juvenile court's denial of Mother's motion for modification. However, we agree with the parents that on this record, the Agency failed to fully comply with the ICWA. We order a conditional reversal and limited remand for the purpose of further ICWA notice verification, while affirming the order denying the modification petition. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 711; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1437-1438.)

I

*FACTUAL AND PROCEDURAL BACKGROUND*

A. Jurisdictional and Dispositional Orders

The parents do not challenge the court's jurisdictional or dispositional findings. The child came to the attention of the Agency in May 2014, when she was about nine months old. After a relative told police officers that the parents were allegedly smoking heroin in front of the child, they investigated and found them leaving the premises with the child and the drugs. The parents were arrested for child endangerment and Mother was found to be in possession of heroin residue and a pipe of the sort used for smoking controlled substances. Father's backpack had a quantity of controlled substances in it and he was arrested for possession for sale of same. The Agency originally placed the child with the paternal grandparents, but she was removed to foster care when that Agency learned the grandfather had a conviction for sexual abuse.

The Agency filed its petition on May 14, 2014, alleging the child was dependent within the meaning of section 300, subdivision (b), because her parents were heroin abusers who were unable to properly care for her. Mother, age 22 at the time, was being prosecuted for driving under the influence and was in custody when initially interviewed by the Agency. She acknowledged she had used controlled substances for the past five or six years and had tested positive for opiates when the child was born, but claimed she was not an addict. She said she understood she would need to stay clean so that she could regain custody of the child. She participated in drug court and by August 2014, was residing as an in-patient at the KIVA drug rehabilitation program. Father has a record of several criminal offenses, including driving while under the influence of drugs and alcohol.

At the detention hearing, Mother informed officials that she believed she had Cherokee heritage, possibly on both sides of her family. The Agency began investigations, providing Mother with forms to fill out about her ancestry. In a prior dependency proceeding involving Mother's own sibling, their mother told the Agency there was no Indian heritage in the family. Father's family is of Mexican descent, without Indian heritage.

Jurisdiction was asserted on July 21, 2014 and the dispositional hearing was held on August 13, 2014. The child was placed in foster care and the parents were granted reunification services. As of August 2014, the court determined it could not yet make an ICWA finding on whether the child was an Indian child.

In preparation for the March 2015 six-month hearing date, the Agency prepared a review report stating that from August 2014 through October 2014, Mother had been visiting with the child twice a week at the KIVA facility. Once released from custody, both parents had weekly supervised visits until December 2014. They had apparently been using drugs as observed during a December visit with the child. Father's parents had kicked them out of their house for using drugs, and Mother had been evicted from her rehabilitation program. By the end of December, both had been arrested for probation violations. Once Mother was released from custody on February 26, 2015, she was readmitted to the KIVA program. Father remained in custody. The Agency was still making efforts to get Mother to fill out the ICWA forms.

## B. Six-Month Review Hearing

The contested six-month review hearing took place March 25, 2015. Mother testified she now was living at KIVA and the child was visiting with her twice a week on a supervised basis, without any reported problems. Although Mother had briefly used controlled substances while pregnant with her second child with Father, she reported that she was now sober and expected to give birth to their son in July 2015. She believed that she would be able to complete the KIVA program and pursue classes and counseling.

Mother was having trouble contacting her parents on the ICWA questions, as her mother was homeless and her father was always drunk. She did not complete the forms providing further information about her claims of Native American heritage until March 18, 2015. In April 2015, the Agency sent notice of the case to three tribal entities

5

of the Cherokee Nation (the tribe).[2] They responded that the child was not of Indian descent and they would not be intervening.

At the six-month hearing, the court heard testimony from both parents and considered the Agency's reports. The court terminated both parents' reunification services and advised them they had a right to seek appellate review via writ. Our court records show that on May 14, 2015, this court dismissed the parents' notices of intent to file a writ petition, based on counsel's representations that there were no viable issues for writ review. (*A.J. v. Superior Court* (D067792).)

C.  Events leading to Modification Motion and Permanency Planning Hearing

Father was released from custody in May 2015 and moved back in with his parents. In June 2015, Mother used her day pass from KIVA to go to the parents' home to pick up her belongings. She discovered Father there, unconscious, and called for medical assistance for him. It was learned he had overdosed on controlled substances. Mother did not report the incident to the Agency. Father was arrested again in August 2015.

In July 2015, Mother was still at KIVA when she gave birth to their new child. No dependency proceedings were initiated for him. By mid-August 2015, Mother completed her in-patient program, which included attending Narcotics Anonymous (NA) meetings. She moved into an apartment that her probation officer approved. However,

---

2      Notices were sent to the three federally recognized Cherokee tribes, the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.

she had to leave when her probation officer found out her roommates were smoking marijuana there. Mother did not inform or consult Agency social workers about that problem.

The adoptions assessment report filed July 6, 2015 took note that Mother previously had successful supervised visits with the child, although she was sometimes inconsistent in attending. Further visits took place during July and August 2015. The child was glad to see Mother, sometimes calling her Mom, but sometimes had difficulty in following her directions. The child was evaluated to be adoptable, and the Agency was considering the current foster parents for adoptive placement. However, due to some concerns that were raised about them, the Agency was also assessing various relatives as possible adoptive placements. In the opinion of the assessment worker, it would not be detrimental to the child to terminate parental rights. The worker had observed that the child's relationship with Mother seemed to be comparable to that of a family friend, rather than of a parent-child nature, partly because Mother's visits had been sporadic due to her unavailability while in custody or participating in treatment programs. Father's visits had been inconsistent and he had been unable to participate in any meaningful way in the child's life.

At the request of the Agency on July 20, 2015, the court made a finding that the ICWA did not apply to the child. The court set the matter for a pretrial settlement conference and scheduled a contested permanency planning hearing for September 18, 2015.

At the pretrial status conference on August 24, 2015, the court made findings that Mother's relatives had supplied new information on potential applicability of the ICWA, and directed that they provide further information to the social worker. The court confirmed that the contested hearings would proceed on Mother's modification petition, which was anticipated to be filed soon, and on permanency planning matters in September 2015.

Based on the new information received about Mother's other relatives, the Agency sent renewed notices on September 3, 2015 to the three Cherokee tribal entities, referencing the previous April 2015 notices sent. Agency workers spoke to some of the maternal relatives, who told them that the child's great-great-grandmother had said she was one quarter or one eighth Cherokee Indian, although they were never registered members of the tribe. As of September 10, 2015, the Agency had not yet received any signed certified mail green receipt cards.

Mother filed her section 388 motion on September 2, 2015, on the grounds that she had made material changes in improving her situation and opposed a permanent plan of adoption. She argued the child's best interests would be best served by being returned to her care. She had remained clean and sober since December 2014, and had been attending a half-day family recovery aftercare program, Vista Hill ParentCare Central, every weekday since August 10, 2015. Her therapy group leaders felt that she was doing well there and presented herself as motivated to improve her circumstances. Her healthy baby boy was born in July 2015 and remained in her care.

The Agency opposed the modification request, filing addendum reports in July, August and September 2015. The Agency was concerned that Mother had not yet identified her own NA sponsor, which she had been encouraged to do as part of her recovery. The Agency questioned why Mother had not taken more action to exclude herself from situations where individuals were actively using drugs. She had previously moved in with marijuana smokers, and it was she who discovered Father's drug overdose. The Agency had no evidence that Mother had completed therapy about any unresolved mental health issues she had, which might have contributed to her substance abuse. Overall, Mother was still in the initial stages of recovery and was only in the process of changing her circumstances. The Agency recommended that the petition be denied.

The court ruled that Mother had made out a prima facie case for modification, and it combined the hearing on that request with the hearing on adoption of a permanent plan.

### C. Combined Hearing; Rulings

At the September 18, 2015 contested modification and permanency planning hearing, Mother's attorney did not refer to the recent additional ICWA notices sent to the three tribes by the Agency, or seek a continuance to get the results. The parties were ready to proceed and the court considered the merits of her petition for modification. Testimony from Mother's therapist at the aftercare program, Cara Silva, stated that Mother had successfully completed an intensive inpatient program and was now an outpatient. She was attending group therapy five times a week and doing well. She was not really working on her "12 step" program, since she had not obtained an NA sponsor,

9

but was otherwise making very substantial progress. The court admitted into evidence the therapist's report and proof of Mother's regular attendance at NA meetings.

The court heard testimony from the Agency's assessment worker, who was concerned that Mother had not voluntarily addressed or overcome her six to seven years of heroin and methamphetamine abuse. It was the caregivers who had been meeting the child's needs on a daily basis for the preceding 16 months. The social worker questioned why Mother had been the one to discover Father's drug overdose and why she had lived with persons who allegedly used marijuana. The social worker had not seen any beneficial parent/child bond among the parties.

In Mother's testimony, she explained that when her probation officer approved the home she had moved into, they were not aware that the roommates were using marijuana. She no longer has any relationship with Father because he is not compatible with her new lifestyle. She discovered his drug overdose in June 2015 only by accident, when she arrived at his parents' house to pick up some of her property. She has been sober for nine months and is living in a drug and alcohol free home. She attends not only daily group therapy but also three NA sessions per week. Her visitation frequency has improved since she finally decided in February to comply with her rehabilitation program.

The court heard arguments of counsel, and read and considered the evidence contained in the motion and the Agency reports and exhibits. In its ruling, the court found Mother did not show the required "changed circumstances" that would justify modifying the current orders, nor could she show that the child's best interests would be served by returning her to Mother's custody. After additional argument on the

10

permanency planning issues, the court made findings by clear and convincing evidence the child was likely to be adopted and none of the statutory exceptions applied (no beneficial parent/child exception). Parental rights were terminated and the child was referred to the Agency for adoptive placement.

Each parent filed a timely notice of appeal.

II

*MODIFICATION MOTION*

Mother, joined by Father, argues the juvenile court abused its discretion in denying her section 388 motion seeking placement of the child with her. Father points out that if the order and related judgment were to be reversed as to her, they should be reversed as to him as well. (*In re Mary G.* (2007) 151 Cal.App.4th 184, 208.)

A. Applicable Standards: Two Prongs

A petitioner requesting modification has the burden of proof to show a change of circumstances or new evidence, and that the proposed modification is in the child's best interests. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47; § 388, subd. (a)(1).) The focus of a modification hearing is whether the petitioner has shown a significant change of circumstances. In deciding whether the petition makes the necessary showing, the juvenile court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

By the time that the juvenile court decides that a parent's reunification services should be terminated, the dependency focus shifts from reunification toward how best to promote the circumstances of permanency and stability for the child. (*In re J.C.* (2014)

11

226 Cal.App.4th 503, 527.)  The court held a full hearing on modification, after Mother made a prima facie showing.  (*In re Marilyn H.* (1993) 5 Ca1.4th 295, 310.)  The petition for modification under those circumstances was addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion, which must be demonstrated by the appellants.  (*In re A.A.* (2012) 203 Cal.App.4th 597, 612; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.)

Although the abuse of discretion standard gives the trial court substantial latitude, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." ' "  (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 119, citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  It is not our role to reweigh the evidence.  "It is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence.  We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence."  (*In re Casey D., supra,* 70 Cal.App.4th at pp. 52-53.)

## B.  Evidence at Hearing; Ruling

In Mother's modification petition under section 388, she presented evidence that since her reunification services were terminated in March 2015, she continued to participate and progress in group therapy, and was attending NA meetings.  Since December 2014, she had been clean and sober.  Her new baby was born in July 2015 and she was successfully caring for him.

The Agency filed an addendum report in opposition to the section 388 petition, noting Mother had not yet obtained a sponsor for her 12-step program, although required to do so. This was her second effort to complete the family recovery program, as she had dropped out in 2014.

At the hearing on whether ordering placement of the child with Mother would promote her best interests, the court specifically addressed the modification factors set out in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532. These included (1) the seriousness of the problem leading to the dependency; (2) the relative strength of the child's bonds with the parent and with the caretaker; (3) the degree to which the problem could be easily resolved. (*Ibid.*)

First, the court evaluated the significance and seriousness of the problem leading to dependency as high, because Mother had a lengthy history of drug abuse and had struggled to achieve sobriety. The child was born with a positive toxicology screen of opiates, and during the dependency proceedings, the parents had visited the child while apparently under the influence of drugs. At the beginning of her pregnancy with her second child, Mother had continued to use drugs, which was a concern for the court.

Although Mother had been able to achieve sobriety in a very structured inpatient and outpatient program, and was showing that she could make changes in her circumstances, it was still a relatively early stage in her treatment. Also, there was a significant month-long gap between the beginning of the aftercare program and Mother's first NA meeting, and Mother was still looking for a sponsor in that program, which delayed her progress.

Next, the court commented that Mother did not appear to be acknowledging that she had triggers, such as being around people that were abusing drugs, and she had not been able to keep herself out of those situations. Although Mother had made progress, the court did not see that she was yet able to fully accept and address the issues before her with respect to her drug treatment. For example, she appeared to have a way to go in terms of her ability to focus not only on self-improvement but also on the needs of the child.

In discussing the second factor in the modification decision, the strength of the relative bonding between the child and Mother, as opposed to the caretakers, the court noted that the child was significantly bonded to her current caregivers. (*In re Kimberly F., supra,* 56 Cal.App.4th 519, 532.) Although Mother had made efforts to engage the child in age appropriate activities when they visited, Mother had not been able to achieve a strong connection to the child. Visitations were still supervised, and the Agency's social worker had reason to characterize Mother as a family visitor to the child, not dominantly a parental figure.

The third factor from *In re Kimberly F.*, *supra*, 56 Cal.App.4th 519, 532, addresses the relative ease with which dependency issues can be resolved. The court evaluated Mother as still having some significant issues in being able to parent safely without a lot of outside structure and support, and it was unknown how Mother would be able to meet those challenges, which now included her second child. The court concluded that Mother had not shown by a preponderance of the evidence that she would have the insight and ability to assist this child and protect her interests, if she were removed from her

14

caregivers and made a transition back to Mother's care. The trial court accordingly denied Mother's section 388 petition.

### C. Analysis on Changed Circumstances and Best Interests

In support of her claims of abuse of discretion in the court's ruling that no material changes in circumstances had been demonstrated, Mother admits that she had initial problems with maintaining sobriety, but emphasizes that once she put her mind to it, she succeeded, despite some immaturity that she had to overcome. She argues that even in light of the short period of reunification that is allowed for a very young child in the dependency system, "she has done everything imaginable to demonstrate her commitment to sobriety that is possible within the very short time period that was allotted to her." (§ 361.5, subd. (a)(1)(B) [six months of reunification services for a dependent child under three years old].)

Mother also contends that the court and the Agency placed undue emphasis on the factor that she briefly lived with people who used marijuana, even though she moved out as soon as she found out. She also argues she should not be penalized simply because she discovered Father unconscious at his parents' house, since she had gone over there for legitimate reasons and did not know he would be there. It does not appear that the court placed undue emphasis upon inappropriate factors. Rather, the court's extensive analysis focused mainly upon Mother's individual qualities, activities and abilities to meet her identified challenges. The court was concerned that Mother's life would become more challenging, now that she had another baby to care for, and that it was unknown how she would meet those challenges with the tools she had developed. The trial court referred to

15

supporting evidence in the record that justified its ongoing serious concerns about Mother's ability to implement and continue with the changes that she was making, even though they were positive in nature.

On this record, Mother was not able to show by a preponderance of the evidence that her requested modification would advance the child's need for permanency and stability. (*In re Kimberly F., supra,* 56 Cal.App.4th 519, 532.) Although her evidence shows that Mother is making positive changes for herself and her new baby, in light of the entire record, we are not persuaded that Mother showed sufficiently changed circumstances on the essential issues that brought this child into the dependency system.

We are not authorized to reweigh the evidence. The trial court resolved conflicts in the evidence and concluded that reasonable inferences should be drawn that the required changed circumstances had not been demonstrated, to enable the court to grant the motion as promoting the child's best interests. (See *In re Casey D., supra,* 70 Cal.App.4th at pp. 52-53.) It was not an abuse of discretion for the trial court to find that a preponderance of the evidence did not support the granting of the modification motion.

III

*ICWA NOTICE ISSUES*

A. Applicable Standards

"Congress enacted ICWA in 1978 'to protect the best interests of Indian children and to promote the stability of Indian tribes and families. . . .' [Citation.] 'The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource.'

16

[Citation.] Section 1911 of ICWA provides that a tribe may intervene in state court dependency proceedings. [Citation.] Notice to the tribe provides it the opportunity to exercise its right to intervene." (*In re Damian C.* (2009) 178 Cal.App.4th 192, 196.) Each tribe has the authority to decide and apply its own membership criteria. (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1300; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1386-1387; *In re K.P.* (2015) 242 Cal.App.4th 1063, 1071; § 224.3, subd. (e)(1).)

California's implementing rules specify that a court has reason to know a child is an Indian child when, among other circumstances, an interested person "informs or otherwise provides information suggesting that the child is an Indian child to the court." (Cal. Rules of Court, rule 5.481(a)(5)(A).) Section 224.3, subdivision (a) imposes a continuing duty on the court and social services agency to conduct an adequate inquiry regarding Indian ancestry. (*In re A.B.* (2008) 164 Cal.App.4th 832, 838; *In re I.B.* (2015) 239 Cal.App.4th 367, 376-377.) Under the ICWA, "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings, and of their right of intervention." (25 U.S.C. § 1912(a).) Generally, section 224.3, subdivision (e)(3) sets the time allowed for reply by the notified party as 60 days. (Cal. Rules of Court, rule 5.482(d).) The ICWA notices, return receipts and responses of the BIA and tribes must be filed in the juvenile court, and hearings on foster care placements or terminations of parental rights shall be delayed at least 10 days

17

after receipt of such notice. (*In re X.V.* (2005) 132 Cal.App.4th 794, 802; 25 U.S.C. § 1912(a).)

Although doctrines of waiver and estoppel generally apply to issues arising during dependency proceedings, ICWA notice issues may be addressed for the first time on appeal. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 251; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.) Even so, the courts have acknowledged that unwarranted delay in the proceedings may harm a dependent child's interest in finality and stability. (*In re X.V., supra,* 132 Cal.App.4th 794, 804 [parents had duty on remand to assist the Agency in ensuring proper notice was given; their silence on remand precluded their second appeal on it].)[3]

When the facts on compliance with the notice requirements of the ICWA are undisputed, we review the matter independently. (*Dwayne P., supra,* 103 Cal.App.4th 247, 254.)

### B. Analysis of Record

The ICWA notices were sent out twice in this case, first in April 2015, when the tribes responded that the child did not qualify for membership. The court's minute order of July 20, 2015 states that ICWA did not apply and notice was not required. The

---

[3]    The Supreme Court has granted a petition for review after the Court of Appeal affirmed an order terminating parental rights, in *In re Isaiah W.* (2014) 228 Cal.App.4th 981, review granted October 29, 2014, S221263. The issue on review is described as follows: "Does a parent's failure to appeal from a juvenile court order finding that notice under the [ICWA] was unnecessary preclude the parent from subsequently challenging that finding more than a year later in the course of appealing an order terminating parental rights?"

reporter's transcript for that hearing does not include such a finding. However, the court at the next hearing reminded counsel that a ruling had already been issued that the ICWA did not apply, which seems to indicate it had made one. (See *People v. Beltran* (2013) 56 Cal.4th 935, 945, fn. 7 [whether clerk's minutes or reporter's transcript should prevail depends on circumstances of the case].)

Nevertheless, once Mother's relatives supplied further genealogy information to the Agency, the court properly required the Agency to carry out further notification procedures. We interpret that order as effectively invalidating the court's previous finding from July 20, 2015 that the ICWA was inapplicable. (See *In re K.M.* (2015) 242 Cal.App.4th 450, 458 [receipt of new evidence that a child may be an Indian child would require previous contrary orders taken in violation of the ICWA to be invalidated]; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1424 ["failure to provide the required notice requires remand"].) The court presumably ordered further notifications to be made because it had developed a new "reason to know" that an Indian child might be involved. (25 U.S.C. § 1912(a); see *In re Gerardo A.* (2004) 119 Cal.App.4th 988, 994; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; Cal. Rules of Court, rule 5.481(a)(5)(A); § 224.3, subd. (b)(1).) It acted appropriately in view of its continuing duty to obtain accurate information pertaining to the ICWA. (*In re I.B., supra,* 239 Cal.App.4th 367, 376-377.)

In its September 3, 2015 supplemental ICWA notices, the Agency referenced the previous April 2015 notices, and provided five new items of information about relatives. In its reports as of September 10, 2015, the Agency had not yet reported the receipt of

19

any signed certified mail green receipt cards from the tribes.  As of the time of the permanency planning hearing on September 18, the matter was not brought up.  We cannot find, however, that Mother waived her right to object by failing to request a continuance or failing to seek a ruling expressly vacating the juvenile court's prior order, that the ICWA did not apply.  In this context, Father's silence on the matter was inconclusive.  Despite the previous indications in the record that a significant degree of Indian ancestry for the child was unlikely, the ICWA issues had been reopened and the court had the obligation to follow it up.

Regardless of any arguable waiver issues, this record is susceptible to an interpretation that some controversy remains about whether the ICWA applies to this case.  Conceivably, there might have been a different response to the renewed ICWA notices given.  (See *In re E.W.* (2009) 170 Cal.App.4th 396, 399-400, 402.)  Although we do not specify the extent of notice to be given (e.g., attaching copies of the previous versions sent), we agree with the parents that the court did not have enough information before it to again conclude that the ICWA was inapplicable to the proceedings.  Limited, conditional reversal of the judgment and remand is required, because the court had reason to know there was such a possibility, but it lacked any information on the results of the additional notice given.  Such information was necessary before the permanency planning issues could be properly resolved.  (See *In re Damian C.*, *supra*, 178 Cal.App.4th at p. 199.)

DISPOSITION

The order denying the modification order is affirmed, and the judgment terminating parental rights is conditionally reversed. The case is remanded to the juvenile court with directions to order the Agency to supply additional information concerning any responses to the ICWA notices sent, insofar as the designated Cherokee tribes are concerned. If, after proper notice, a tribe claims the child is an Indian child, the court shall proceed in conformity with all provisions of the ICWA. If no tribe claims the child is an Indian child, the judgment terminating parental rights shall be immediately reinstated.


_____
HUFFMAN, Acting P. J.

WE CONCUR:


_____
NARES, J.


_____
McINTYRE, J.


21