Filed 8/11/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re I.B.,<br><br>a Person Coming Under the Juvenile Court Law. | B259021<br>(Los Angeles County<br> Super. Ct. No. CK76502) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br> Plaintiff and Respondent,<br><br> v.<br><br>W.H.,<br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court for Los Angeles County, Timothy Saito, Judge.  Reversed and remanded.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

Under the federal Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and the related California statutes governing custody proceedings involving Indian children (Welf. & Inst. Code, § 224 et seq.),[1] when a juvenile court in dependency proceedings knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, that child must notify the child's tribe of the pending proceedings and of the tribe's right of intervention. (25 U.S.C. § 1912(a); § 224.2, subd. (a).) That notice must include, among other things, the names (including maiden, married, and former names or aliases), birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, to the extent it is known, of the Indian child's biological parents, grandparents, and great-grandparents. (25 C.F.R. § 23.11(a), (d)(3); § 224.2, subd. (a)(5).)

The issue presented in this case is whether there is a duty under the ICWA to send updated notices to the relevant tribes when additional information regarding the child's ancestors (such as previously omitted birthdates, aliases, and/or alternate spellings) is obtained after the original ICWA notices were sent. We conclude there is such a duty. Because the Los Angeles County Department of Children and Family Services (the Department) in this case failed to send updated notices after it obtained additional information, we reverse the order terminating the parental rights of appellant W. H. (mother) with regard to her daughter, I.B.,[2] for the limited purpose of compliance with the ICWA.

---

[1]    Further undesignated statutory references are to the California Welfare and Institutions Code.

[2]    The dependency petition filed in this case refers to the child as I.H., using mother's last name. The child's birth certificate, however, refers to her as I.B., using her alleged father's last name (although the spaces for the father's name were left blank). We refer to her as I.B., the name on her birth certificate.

# BACKGROUND

Because compliance with the ICWA is the only issue raised in this appeal, our discussion of the facts and procedural background focuses on the facts relevant to compliance with the ICWA.

The Department filed a juvenile dependency petition on February 1, 2013, alleging that mother "has a history of mental and emotional problems, including a diagnosis of Schizophrenia, Bipolar Disorder, Major Depressive Disorder, Recurrent, Severe, with Psychotic Features, auditory hallucinations, visual hallucinations, delusions and homicidal ideation, which render the mother unable to provide regular care for [I.B.]." The petition also alleged that I.B.'s sibling, T.B. was a dependent of the juvenile court due to these same mental and emotional problems.[3] Attached to the petition was an "Indian Child Inquiry Attachment" indicating that a social worker from the Department questioned mother about I.B.'s possible American Indian heritage, and mother stated that she and her child had no such heritage.

At the detention hearing held on February 1, 2013, the juvenile court ordered I.B. detained, and found William B. to be I.B.'s alleged father.[4] At that same hearing, mother signed a form (Parental Notification of Indian Status) stating that she may have Indian heritage, and referred to the "Blackfoot" tribe.[5]

---

[3] These allegations were made under section 300, subdivision (b) (count b-1) and section 300, subdivision (j) (count j-1).

[4] The Department subsequently attempted to interview William B.; although he admitted he had sexual relations with mother, he was unsure if he was I.B.'s father. He declined to be interviewed further until his paternity was established through a DNA test. He did not participate in any of the dependency proceedings.

[5] The correct name for the tribe is Blackfeet.

3

In the jurisdiction/disposition report filed on March 18, 2013, the Department reported that on March 8, mother told the social worker assigned to the case (the CSW) that she was Cherokee and that her father was of Blackfeet, Cherokee, and other Indian heritage. The Department stated that a dependency investigator (the DI) was following up on mother's American Indian ancestry and would provide an additional report at the next scheduled court date, the jurisdiction hearing. That report, filed on April 2, 2013, stated that the DI had made attempts to contact mother to obtain further information for ICWA purposes, but had been unable to reach her.

The juvenile court sustained the petition as alleged at the jurisdiction hearing, at which mother appeared, and continued the matter to May 6, 2013 for the disposition hearing. On April 26, 2013, the Department sent notice of the disposition hearing (using form ICWA-030) to the Cherokee Nation, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee, the Sacramento Area Director of the Bureau of Indian Affairs, the United States Department of the Interior, and the Blackfeet Tribe of Montana. The form identified the child as I.H. (see fn. 2, *ante*), provided her date of birth and place of birth, and stated that she is or may be eligible for membership in Blackfeet and Cherokee tribes. In addition, the notice provided the following information regarding I.B.'s relatives:

●     <u>Biological mother</u>: name (W.H.), current address (former address was unknown), birthdate, birthplace, and tribe or band (Blackfeet Tribe, Cherokee Nation, Eastern Band of Cherokee Indians, United Keetoowah Band of Cherokee).[6] It noted that all information was provided by mother, and that mother was given

---

[6]     The tribal membership or enrollment number on all of I.B.'s relatives was marked "Unknown."

4

additional time to obtain more information, but she did not provide any additional information.

● Biological father: name (William B.), current address (former address was unknown), and birthdate. His birthplace and tribe or band were marked "Unknown."

● Mother's biological mother (child's maternal grandmother): name (Lillian H.), current address (former address was unknown), birthdate, birthplace, and tribe or band ("Cherokee Indian Tribe").

● Mother's biological father (child's maternal grandfather): name (Willie Ray H.), former address (current address was unknown), birthdate, birthplace, and tribe or band ("Blackfoot and Cherokee Indian Tribe").

● Father's biological mother (child's paternal grandmother): name (Elanor Valasquez[7]). The remaining boxes were marked "Unknown."

● Father's biological father (child's paternal grandfather): all boxes were marked "Unknown."[8]

● Mother's biological grandmother (child's maternal great-grandmother): name (Tabatha Morgan), birthdate ("09/18 or 19, 19??"), birthplace, tribe or band ("Cherokee Indian Tribe"), and place of death (date of death was unknown); her current and former addresses were marked "Unknown."

● Mother's biological grandfather (child's maternal great-grandfather): name (Lee White), birthplace (just the State), and tribe or band ("Cherokee Indian

---

**7** Although we generally do not use relatives' last names in child dependency cases, under the circumstances here we find that use of last names with regard to some of the relatives is necessary to adequately discuss the issue presented.

**8** All the boxes on all of the remaining paternal relatives were marked "Unknown."

Tribe"); his current and former addresses, birthdate, and date and place of death were marked "Unknown."

● Mother's biological grandmother (child's maternal great-grandmother): name (D.W. [first initial only]) and tribe or band ("Blackfeet Indian Tribe"); her current and former addresses, birthdate, birthplace, and date and place of death were marked "Unknown."

● Mother's biological grandfather (child's maternal great-grandfather): name (Ollie H.), birthdate ("5 or 6/28, 19??"), birthplace, tribe or band (Blackfeet and Cherokee Indian Tribes), and year and place of death; his current and former addresses were marked "Unknown."

On May 6, 2013, the juvenile court conducted the disposition hearing, signed the case plan, and ordered reunification services for mother. The court also ordered the Department to report on July 1, 2013 on the progress of the ICWA notices.

In its July 1, 2013 report, the Department provided receipts showing that all of the addressees received the notices sent in April. The Department reported that the CSW received a letter (which was attached to the report) from Cherokee Nation Indian Child Welfare noting that the information the Department sent in the ICWA notice was not complete and asking for maternal great-grandfather Lee White's middle name and date of birth, and maternal great-grandmother D.W.'s middle name, maiden name, and date of birth. The CSW faxed a letter (also attached to the report) in response to the request on June 6, 2013, stating that mother had provided the following information:

● Tabatha Morgan (the child's maternal great-grandmother) "should be filed under Tabitha Coleman and her birthdate is 9/18/1909."

- Lee White (the child's maternal great-grandfather) "should be filed under Lee Thomas 9/16/1909."[9]

- Ollie H.'s birthdate "is 6/28/1919 and is the child's paternal great grandfather."[10]

- Mother did not have any additional information regarding D.W., who the CSW referred to as "the child's paternal great grandmother."[11]

- Mother did not have any additional information regarding Elanor Valasquez, but she stated that "Elanor Valaquez is the child's paternal grandmother." (It is unclear whether the CSW intended to provide a different spelling of the grandmother's last name by this reference.)

With regard to the other tribes and entities that received the ICWA notice, the Department reported that it received responses (which were attached to the report) from the Eastern Band of Cherokee Indians, and the Department of the Interior, Bureau of Indian Affairs. The Eastern Band of Cherokee Indians responded that I.B. was not registered or eligible for membership in that tribe. The Department of the Interior stated that the Bureau of Indian Affairs does not determine tribal eligibility or maintain a comprehensive list of persons possessing Indian blood, and directed the Department to notify the tribes directly. The Department did not receive any response from the Blackfeet Tribe of Montana or

---

[9]   Cherokee Nation Indian Child Welfare had asked for Lee White's middle name and date of birth. Thus, it is not entirely clear whether Thomas is Lee White's middle name, or whether Thomas should replace White as Lee's last name.

[10]   It is likely that the CSW was mistaken in stating that Ollie H. is the child's *paternal* great-grandfather, because he has the same last name as mother and mother's father. Rather, it appears that Ollie H. is *mother's* paternal grandfather, and thus is the child's *maternal* great-grandfather.

[11]   Once again, it appears that D.W. is *mother's* paternal grandmother, and thus is the child's *maternal* great-grandmother.

the United Keetoowah Band of Cherokee, and followed up by calling and/or emailing those tribes to ask them to respond.

The juvenile court ordered the Department to continue to follow up on the ICWA notices, and to report on its progress at the next hearing. In its subsequent report, filed on November 4, 2013, the Department purported to recap the responses it received from the April 2013 ICWA notices. It indicated that the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee had all responded and stated that I.B. was not registered and/or eligible for membership in the respective tribe. We note, however, that in its July 1, 2013 report, the Department had stated that it had not received a response from the Cherokee Nation or the United Keetoowah Band of Cherokee regarding whether I.B. was registered or eligible for membership in those tribes.[12] Neither report attaches any document from the Cherokee Nation or the United Keetoowah Band of Cherokee stating that I.B. is not registered or eligible for membership in those tribes.

The November report also reported on the Department's efforts since July 2013 to determine whether I.B. was an Indian child. It stated that the CSW sent additional letters to the Bureau of Indian Affairs, the United States Department of the Interior, and the Blackfeet Tribe of Montana, asking if I.B. had American Indian Heritage, and attached to the report a form showing that on September 30, 2013, the Department sent four pieces of mail by registered mail, return receipt requested, to the Bureau of Indian Affairs, the United States Department of the

---

[12] Inexplicably, the November 2013 report indicated that the Department received a response *on May 3, 2013* from the United Keetoowah Band of Cherokee stating that I.B. was not a descendant of anyone on the Keetoowah Roll, but in its July 2013 report the Department reported that, as part of its follow up on tribes that had not yet responded, the CSW called the United Keetoowah Band of Cherokee *on June 20, 2013* and was told that the tribe had not received the April 2013 notice and letter.

Interior, United Keetoowah Band of Cherokee Indian, and Blackfeet Tribe of Montana. It also attached an ICWA notice, with a certificate of mailing stating that it was mailed to United Keetoowah Band of Cherokee and Blackfeet Tribe of Montana on September 30, 2013. The information contained in the notice (which notified the tribes of the hearing on November 4, 2013) was exactly the same as the information in the previous notice sent in April 2013, without any of the corrections or additional information that the CSW had provided to the Cherokee Nation in June 2013. It appears that the CSW did not receive any response from either tribe, despite her attempt to call the Blackfeet Tribe of Montana.

At the six-month review hearing on November 4, 2013, the juvenile court found that the ICWA did not apply. At the next hearing, held on January 29, 2014, the court again found that the ICWA did not apply and terminated reunification services for mother. The section 366.26 permanent plan hearing was set for May 28, 2014. The hearing was continued several times, and on September 5, 2014, the juvenile court terminated mother's parental rights. Mother timely filed a notice of appeal from the order terminating her parental rights.

## DISCUSSION

The only issue mother raises on appeal is compliance with the notice provisions of the ICWA. She contends the juvenile court erred in finding that the ICWA did not apply, because the ICWA notices the Department sent in September 2013 were not sent to all of the relevant tribes and were not complete because they did not include all of the information the Department had obtained. The Department contends that any error in the September 2013 notices was harmless because the Department provided proper notice in April 2013. Mother responds that once the Department received additional information regarding mother's

9

relatives in June 2013, it was required to send a new set of notices to all of the tribes. Mother is correct.

The ICWA was enacted by Congress "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." (25 U.S.C. § 1902.) It "confers on tribes the right to intervene at any point in state court dependency proceedings. [Citations.] 'Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending.' [Citation.] 'Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies.' [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253.)

The duty to give notice is triggered whenever the court knows or has reason to know that an Indian child is involved in a proceeding in which a party is seeking the foster care placement of, or termination of parental rights to, the child. (25 U.S.C. § 1912(a); § 224.2, subd. (a).) Under California law, the juvenile court and child welfare agency "have an affirmative *and continuing* duty to inquire whether a child . . . is or may be an Indian child in all dependency proceedings." (§ 224.3, subd. (a), italics added.) If the court or social worker for the child welfare agency knows or has reason to know that an Indian child is involved, the social worker must provide notice in accordance with the ICWA. (§ 224.3, subd. (d).)

"[O]ne of the primary purposes of giving notice to the tribe is to enable the tribe to determine whether the child involved in the proceedings is an Indian child." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 470.) Therefore, the notice given under the ICWA "must . . . contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership. [Citations.]" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.) To that end, federal regulations and California statutes provide that the notice must

10

include, to the extent known, the names (including maiden, married, and former names or aliases), current and former addresses, birthdates, places of birth and death, and tribal enrollment numbers and/or other identifying information for the Indian child's biological parents, grandparents, and great-grandparents. (25 C.F.R. § 23.11(a), (d)(3); § 224.2, subd. (a)(5)(C).)

The social worker in a child dependency case is statutorily required to interview the child's parents and extended family members to gather the information required for the ICWA notice. (§ 224.3, subd. (c).)[13] The notice must be sent by registered mail, with return receipt requested, to any tribe in which the child may be a member or eligible for membership, and no proceeding may be held until at least 10 days after receipt of the notice by the tribe or tribes. (25 U.S.C. § 1912(a); § 224.2, subd. (a)(1), (a)(3), (d).) In California, "[p]roof of the notice, including copies of notices sent and all return receipts and responses received," must be filed before every hearing, except the detention hearing, unless the juvenile court determines that the ICWA does not apply to the case. (§ 224.2, subd. (b), (c).)

Finally, and most importantly for this case, even if there has been a determination that the ICWA does not apply, "if the court [or] social worker . . . subsequently receives any information required under paragraph (5) of subdivision (a) of Section 224.2 that was not previously available or included in the notice

---

[13] Subdivision (c) of section 224.3 provides: "If the court, social worker, or probation officer knows or has reason to know that an Indian child is involved, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2, contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."

11

issued under Section 224.2, the social worker . . . [must] provide the additional information to any tribes entitled to notice under paragraph (3) of subdivision (a) of Section 224.2 and the Bureau of Indian Affairs." (§ 224.3, subd. (f).)

In this case, once the CSW received the additional information regarding the maternal great-grandmother Tabatha Morgan's name and birthdate, maternal great-grandfather Lee White's name and birthdate, and maternal great-grandfather Ollie H.'s birthdate -- all of which were required to be included in the notice under section 224.2, subdivision (a)(5)(C) -- she was required under section 224.3, subdivision (f), to provide that information to *all* of the tribes that were sent the April 2013 notice. Her failure to do so was not, as the Department contends, harmless error. (*In re Cheyanne F.*, *supra*, 164 Cal.App.4th at p. 576 ["errors or omissions in the notice are reviewed under the harmless error standard"].) As demonstrated by the Cherokee Nation's request for the birthdates and other names of I.B.'s great-grandparents, all of whom were alleged to have Indian heritage, that information is critical for tribes to determine whether I.B. may be eligible for membership. (See *In re Francisco W.* (2006) 139 Cal.App.4th 695, 703 ["It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the one with the alleged Indian heritage"].)

Because the Department failed to comply with its duty to provide the relevant tribes with all of the information it obtained regarding I.B.'s relatives, the order terminating mother's parental rights to I.B. must be reversed, and the matter remanded to the juvenile court for the limited purpose of providing proper notice under the ICWA.

## DISPOSITION

The order terminating parental rights is reversed.  The case is remanded to the juvenile court with directions to order the Department to provide an updated notice, to all of the tribes that previously were provided notice, that includes all of the corrections and information the Department obtained from mother or any of mother's relatives, in accordance with the ICWA.  If after proper notice the juvenile court finds the child is an Indian child, the court shall proceed in conformity with the ICWA.  If after proper notice the juvenile court finds the child is not an Indian child, the order terminating parental rights shall be reinstated.

**CERTIFIED FOR PUBLICATION**


WILLHITE, J.


We concur:




EPSTEIN, P. J.




MANELLA, J.


13