Filed 6/28/22  In re L.A. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re L.A., a Person Coming Under the Juvenile Court Law. | B312752 (Los Angeles County Super. Ct. No. 20CCJP00331A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.C.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant L.C. (mother) appeals from an order terminating her parental rights to L.A. (minor, born Jan. 2019). Mother's sole contention is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).

We affirm.

## BACKGROUND[1]

*Referral*

In December 2019, DCFS received a referral alleging general neglect and physical abuse of minor by mother. During an interview with a DCFS social worker, mother provided the

_____

[1]    Because ICWA error is the only issue raised in this appeal, this summary of the factual and procedural background focuses on matters related to ICWA compliance. (*In re I.B.* (2015) 239 Cal.App.4th 367, 370.)

2

partial name of minor's father (father),[2] stating that he had two last names but that she only remembered one. She provided father's age but not his birthdate. Mother did not provide any contact information for father. The social worker "completed a CWS/CMS search"; there were "no hits" for father's name.

*Detention and Dependency Petition*

Minor was detained from mother in January 2020 and placed with a nonrelated extended family member. Shortly thereafter, DCFS filed a Welfare and Institutions Code section 300[3] petition seeking the juvenile court's exercise of dependency jurisdiction.

*Detention Hearing*

On January 22, 2020, mother filed a Parental Notification of Indian Status (ICWA-020) form indicating that she may have Indian ancestry through her father (maternal grandfather).[4]

At the detention hearing, the juvenile court ordered DCFS "to investigate Indian ancestry, including attempting to interview maternal relatives." The juvenile court acknowledged the paternity questionnaire submitted by mother, which identified

---

[2]    Father did not appear in the proceedings below and is not a party to this appeal.

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4]    Mother had initially signed an "Indian Ancestry Questionnaire" in December 2019, indicating that she had no information regarding any Indian ancestry of minor.

father as minor's parent.[5]  The court found father to be minor's presumed father.

*Jurisdiction/Disposition Report*

When interviewed by a DCFS dependency investigator in February 2020, both maternal grandfather and minor's maternal aunt (maternal aunt) denied having Indian ancestry.

When asked about father's whereabouts, maternal aunt denied having any contact information for him or knowing someone who might have such information.  She stated: "'We don't have contact with him like that, he kinds [*sic*] shows up out of nowhere . . . ."  Maternal grandfather also denied having contact information for father; he identified only mother as someone who might have information about him.

Mother told the dependency investigator that she did not have any contact information for father and did not know his birthdate.  Mother stated that she would check her contact list to see if she knew of anyone who could be contacted "to get in touch with" father.

Without father's birthdate or identifying information, DCFS reported that it had been unable to locate him.

*ICWA Findings*

On February 20, 2020, the juvenile court referenced maternal aunt's and maternal grandfather's denial of Indian ancestry.  DCFS requested that the court make a "[n]o ICWA finding."  The court asked if anyone wished to be heard on the issue; the reporter's transcript indicates no response to the court's inquiry.  The court then found that "ICWA notice [was]

---

[5]    The section of the questionnaire regarding how to locate father was left blank.

proper and complete[,]"[6] that it did not have reason to know or believe that minor was an Indian child as defined by ICWA, and that ICWA did not apply to these proceedings. The court did not order notice to any tribe or the Bureau of Indian Affairs.

*Last Minute Information for the Court (March 4, 2020)*

DCFS described its continued efforts to locate father in a last minute information for the court filed in early March 2020.

DCFS's due diligence search revealed only one person in the United States with father's name. When the dependency investigator contacted that individual, he denied knowing anyone by mother's or minor's name. He stated that he was 57 years old[7] and did not have any children.

The dependency investigator contacted mother again to inquire about father's whereabouts. Mother reported that she had been unable to locate father through collaterals but that she would drive to father's grandmother's house to see if she could locate him. The dependency investigator asked mother to provide father's grandmother's address so that DCFS could contact her. Mother said that she did not know the exact address but could drive to the home by memory. The dependency investigator again asked mother to provide her with the address or other information so that DCFS could make contact. Mother said she would contact father's grandmother and call the dependency investigator back.

Mother called the dependency investigator a week later to report that she had attempted to contact father via social media.

---

[6]   It appears that the juvenile court misspoke when it referred to "ICWA notice" rather than the inquiry requirements.

[7]   Mother had reported that father was in his 20's.

Mother had also driven to father's grandmother's home, but she no longer resided there. Mother reported that she had no way of contacting father.

*Adjudication*

At the March 5, 2020, adjudication hearing, the juvenile court referenced DCFS's efforts to locate father, including its due diligence search and mother's report that father's grandmother had moved. The court found notice to the parents proper. The court sustained the section 300 petition as amended by interlineation and continued the matter for disposition.

On June 26, 2020, the juvenile court declared minor a dependent of the court, removed him from mother's custody, and ordered DCFS to provide mother with family reunification services. The court found "by clear and convincing evidence that [DCFS] . . . submitted a due diligence search, an affidavit of due diligence search, and the father's whereabouts are unknown." On that basis, the court denied father reunification services.[8]

*Termination of Parental Rights*

The juvenile court terminated reunification services for mother on December 16, 2020, and set the matter for a section 366.26 permanency planning hearing.

DCFS conducted another due diligence search for father. His whereabouts remained unknown. DCFS published notice of the permanency planning hearing in a newspaper on four nonconsecutive days. On April 13, 2021, the juvenile court found

---

[8] Under section 361.5, subdivision (b)(1), reunification services need not be provided to a parent if the court finds, by clear and convincing evidence, that the whereabouts of the parent are unknown.

that notice was proper as to father for the upcoming hearing on May 19, 2021.

On May 19, 2021, the juvenile court terminated mother's and father's parental rights to minor.

*Appeal*

Mother filed a timely notice of appeal from the order terminating parental rights.

## DISCUSSION

I. *Relevant Law*

"[The] ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family."[9] (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881–882; see also 25 U.S.C. § 1902.)

Under California law, DCFS and the juvenile court "have an affirmative and continuing duty to inquire" into whether a dependent child "is or may be an Indian child." (§ 224.2, subd. (a); see also *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742.) This duty includes DCFS asking the parents, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect whether the child is or may be an Indian child (§ 224.2, subd. (b); see also Cal. Rules of Court, rule 5.481(a)(1)), and the juvenile court inquiring at each

---

[9] An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition].)

7

party's first appearance in the proceedings whether he or she knows or has reason to know that the child is an Indian child (§ 224.2, subd. (c); see also Cal. Rules of Court, rule 5.481(a)(2)). Further inquiry and notice to the tribes may be required only if there is "reason to believe" or "reason to know" that the child is an Indian child based upon this initial inquiry.[10] (§ 224.2, subds. (d), (e), & (f); 25 C.F.R. § 23.107(c) (2019).)

A spate of appellate courts has recently weighed in on the consequence of a social services agency's failure to conduct the required ICWA inquiry, resulting in "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; see also *In re Dezi C.* (June 14, 2022, B317935) ___ Cal.App.5th ___ [2022 Cal.App.Lexis 514, at pp. *7–*9].) Our Division has adopted the following rule: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*In re Dezi C.*, *supra*, at p. *10.)

II. *Standard of Review*

We review the juvenile court's ICWA findings for substantial evidence. (*In re Dezi C.*, *supra*, ___ Cal.App.5th ___

---

[10] Here, mother only challenges compliance with the initial duty of inquiry as to father's possible Indian ancestry, so the duties of further inquiry and notice are not at issue. (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

[2022 Cal.App.Lexis 514, at p. *6].) Under this standard, "[w]e must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citation.] Mother, as the appellant, 'has the burden to show that the evidence was not sufficient to support the findings and orders.' [Citation.]" (*In re Austin J., supra,* 47 Cal.App.5th at p. 885.)

III. *Analysis*

A. *Substantial evidence supports the juvenile court's ICWA finding*

Substantial evidence supports the juvenile court's finding that ICWA does not apply to minor.

DCFS investigated mother's claim of possible Indian ancestry through maternal grandfather by interviewing maternal grandfather and maternal aunt. Both denied Indian ancestry.[11]

No inquiry regarding Indian ancestry could be made of father because his whereabouts were unknown during the entirety of the proceedings below. Albeit ultimately unsuccessful, DCFS's efforts to locate father were extensive and demonstrate its exercise of due diligence.

The information provided by mother regarding father was limited—a partial name, an age but no birthdate, and no contact information. DCFS contacted the only person in the United States with father's partial name. He was significantly older than the age mother had reported that father was, and he denied knowing mother or minor.

DCFS also asked both maternal grandfather and maternal aunt about father's whereabouts, and each denied having contact

---

[11] Mother does not argue on appeal that DCFS's inquiry regarding her own possible Indian ancestry was deficient.

9

information for him. Maternal aunt denied knowing anyone else who might have contact information for father, and maternal grandfather only identified mother as someone who might have such information.

When mother mentioned that she would drive to father's grandmother's house in an attempt to locate him, the dependency investigator repeatedly asked mother to provide the grandmother's address so that DCFS could make contact. Mother would not provide that information and later reported that father's grandmother no longer resided at the address.

Thus, DCFS had no actionable information enabling it to contact father's extended family members to make inquiries of them. And, as there was no information before the juvenile court to suggest that minor might be an Indian child through father, substantial evidence supports its order that ICWA did not apply.

B. *Any error was harmless*

Urging us to reverse, mother contends that DCFS failed to meet its initial duty of inquiry regarding father's possible Indian ancestry because the DCFS social worker did not ask mother what father's grandmother's name was or ask for the name of another paternal relative. She also points to a lack of evidence in the record showing that DCFS "pursu[ed] any other source of inquiry, such as others having an interest in the child, or the party reporting child abuse or neglect, regarding paternal Indian ancestry." Finally, she argues that, following its ICWA finding on February 20, 2020, the juvenile court failed to revisit ICWA in violation of its ongoing duty of inquiry.

We are unpersuaded by these arguments. Applying the "'reason to believe' rule" that we adopted in *In re Dezi C.*, *supra*, ___ Cal.App.5th ___ [2022 Cal.App.Lexis 514, at pages *10–*11],

10

we conclude that any possible error was harmless because nothing in the record suggests a reason to believe that minor is an Indian child within the meaning of ICWA. Mother makes no proffer on appeal that father has any Indian heritage, that mother knew father's grandmother's name or that of any other paternal relative if she had been asked, that the names of paternal relatives would have shed any light on whether minor was an Indian child,[12] or that anyone else having an interest in the child, including the reporting party, would have known anything pertaining to whether minor had Indian heritage through father.

Finally, as for mother's claim that the juvenile court failed to comply with its ongoing duty of inquiry after finding that ICWA did not apply, mother has not suggested that there was a reasonable probability of obtaining meaningful information through continued inquiry. (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [continued inquiry is required "where the probability of obtaining meaningful information is reasonable in the context of ICWA"].) After all, father never appeared in the proceedings below and the record does not reflect that any

---

[12] Mother argues "that DCFS has access to databases and search engines that would allow a comprehensive and thorough search if they were provided a name to search." Mother does not, however, cite any authority requiring DCFS to conduct a due diligence search to locate extended family members to inquire about Indian ancestry. (Cf. Cal. Rules of Court, rule 5.481(a)(3) [requiring the court to order a due diligence search to find and inform a parent, Indian custodian, or guardian who does not appear at the first hearing, or is unavailable at the initiation of a proceeding, that he or she must complete a Parental Notification of Indian Status (ICWA-020) form].)

11

paternal relative of whom inquiry could have been made was ever located or otherwise became involved in the case.

Remand is unwarranted.

## DISPOSITION

The order terminating parental rights is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


12