Filed 11/22/22  In re Hailey R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re HAILEY R., a Person Coming Under the Juvenile Court Law. | B317884 (Los Angeles County Super. Ct. No. 18CCJP03868B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HEATHER H., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Hernan D. Vera, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Following the termination of parental rights over her daughter, Hailey R. (Hailey, born Sept. 2009), Heather H. (mother) filed the instant appeal. She alleges that both the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with their initial inquiry duties under the Indian Child Welfare Act (ICWA) and related California law. Because the juvenile court did not commit reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I. Prior Related Proceedings

Mother is no stranger to the juvenile dependency system. In June 2018, mother gave birth to her fourth child, Timothy L. (Timothy), and he tested positive for methamphetamine—the

---

[1] Because ICWA error is the only issue raised in this appeal, this summary of the factual and procedural background focuses on matters related to ICWA compliance. (*In re I.B.* (2015) 239 Cal.App.4th 367, 370.)

third of mother's five children to do so.[2] DCFS filed a separate Welfare and Institutions Code section 300[3] petition alleging that mother's substance abuse put Timothy at risk of serious physical harm.[4]

Mother completed a "Parental Notification of Indian Status" (ICWA-020) form, indicating that she had no Indian ancestry as far as she knew. (*Timothy L.*, *supra*, B311103, at p. 3.) When the juvenile court asked mother about Timothy's possible Indian status at the detention hearing, mother reiterated that she did not have any known Indian ancestry. (*Ibid.*) The juvenile court found that there was "no reason to believe that this [was] an [ICWA] case or that [the ICWA] applie[d]." (*Ibid.*) On February 17, 2021, the juvenile court terminated mother's parental rights.

---

[2] Aside from Hailey and Timothy, mother has three other children. These children were part of an earlier dependency proceeding, which closed in 2019 with the adoption of all three children by their maternal aunt. They are not part of this appeal.

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] On our own motion, we take judicial notice of the prior unpublished opinion in this case. (See *In re Timothy L.* (May 31, 2022, B311103 [nonpub. opn.] (*Timothy L.*).) Per California Rules of Court, rule 8.1115(b), we may cite this opinion "to explain the factual background of the case." (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10; *The Utility Reform Network v. Public Utilities Com.* (2014) 223 Cal.App.4th 945, 951, fn. 3.)

## II.    Current Proceeding

On January 19, 2021, DCFS filed another section 300 petition against mother. This petition alleged that mother's history of substance abuse and prior abuse of her other children posed a substantial risk of serious physical harm to her oldest daughter, Hailey.

On March 2, 2021, mother again denied any Indian heritage. Mother then went incommunicado for roughly six months; she did not attend any hearings in that time, and DCFS had a difficult time locating her to provide notice of upcoming hearings.

Hailey's presumed father, Juan R. (father), did attend multiple hearings, including the detention hearing held on March 17, 2021. At that hearing, father told the juvenile court that he had nothing to report regarding ICWA. He also filed an ICWA-020 form, checking the box indicating that neither he nor Hailey was a member or eligible for membership in a federally recognized Indian tribe, and that he did not have any lineal ancestors who were members of such tribes.

Based on father and mother's representations, the juvenile court found that there was no reason to know that Hailey was an Indian child within the meaning of ICWA. Hailey was removed from her parents and placed with her paternal grandmother and prospective adoptive parent, with whom she had lived since she was two weeks old.

On September 16, 2021, mother resurfaced and submitted a second ICWA-020 form identical to father's.

On January 10 and 11, 2022, the juvenile court held a section 366.26 hearing. Mother attended these hearings. After

4

hearing argument, the court terminated mother's parental rights as to Hailey over mother's objections.

Mother timely appealed.

**DISCUSSION**

**I.    Relevant Law and Standard of Review**

A.    *ICWA*

"ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement' [citation], and 'to promote the stability and security of Indian tribes and families by establishing . . . standards that a state court . . . must follow before removing an Indian child from his or her family' [citations]."[5]   (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 780 (*Dezi C.*), review granted June 28, 2022, S275578.)

Under California law enacted to implement ICWA, DCFS and the juvenile court have "three distinct duties . . . in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)   The first is the initial duty of inquiry, which DCFS "discharges . . . chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.' ([§ 224.2], subd. (b).)  This includes inquiring of not only the child's parents, but also others, including but not limited to, 'extended family members.'  (*Ibid.*)  For its part, the juvenile court is required, '[a]t the first appearance' in a dependency case, to 'ask each participant' 'present' 'whether the participant knows or has reason to know

---

[5]    An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"  (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition].)

5

that the child is an Indian child.' (*Id.*, subd. (c).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 780; see also Cal. Rules of Court, rule 5.481(a)(1)-(2).) The second duty—the duty of further inquiry—is triggered if there is "reason to believe that an Indian child is involved" (§ 224.2, subd. (e)), while the third duty—to notify the relevant tribes—is triggered if there is "reason to know . . . that an Indian child is involved" (§ 224.3, subd. (a)).[6]

A spate of appellate courts has recently weighed in on the consequence of a social services agency's failure to conduct the required initial ICWA inquiry, resulting in "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; see also *Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777–778.) Our Division has adopted the following rule: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Dezi C.*, *supra*, at p. 779.)

B. *Standard of Review*

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. [Citation.]" (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.) "Where, as here, there is no doubt that the Department's inquiry was erroneous, our

---

**6** Here, mother only challenges compliance with the initial duty of inquiry, so the duties of further inquiry and notice are not at issue.

6

examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## II.     Analysis

Urging reversal, mother identifies two ICWA inquiry errors made below.  First, she asserts that the juvenile court failed to ask her about any potential Indian heritage when she was present before the court, both at her February 2021 arraignment hearing and at the January 2022 termination hearing.  Second, she argues that DCFS failed to make inquiries with several extended family members with whom it came into contact over the course of these proceedings, including Hailey's paternal grandmother, paternal uncles, and maternal aunt.  DCFS concedes that these were errors but contends that they were ultimately harmless.

We agree with DCFS.  Applying the "'[r]eason to [b]elieve' [r]ule" that we adopted in *Dezi C.*, *supra*, 79 Cal.App.5th at page 779, we conclude that DCFS's failure to make the requisite inquiries of mother and extended family members was harmless because nothing in the record suggests a reason to believe that Hailey is an Indian child within the meaning of ICWA. Mother and father both repeatedly reported that they had no known Indian ancestry, and nothing in the record suggests that either parent was adopted such that "their self-reporting of 'no heritage' may not be fully informed [citation]." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779; contra, *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [a mother's denial of Indian heritage was unreliable

because she was adopted at a young age and had no contact with her biological parents].) Mother also makes no proffer on appeal that she or father have any Indian heritage. (See *Dezi C.*, at pp. 779, fn. 4, 786.)

Additionally, mother does not dispute that in 2018, the juvenile court properly found that ICWA did not apply to another of her children. This is buttressed by mother's submission of an ICWA-020 form that is functionally identical to the form she submitted back in 2018. And mother has not asserted that she, or any of Hailey's extended relatives, could have given new information to the juvenile court had it made the proper inquiry.

Our analysis is underscored by ICWA itself, which narrowly defines "Indian child" to include only a child who is herself or whose parent is a current member of a federally recognized Indian tribe. (§ 224.1, subd. (b).) We doubt that Hailey's extended relatives, if asked, would have been able to provide any different information about whether Hailey, her mother, or her father were current tribal members—particularly in the absence of any contrary suggestion from mother, either before the juvenile court or on appeal. (See *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1024 (dis. opn. of Crandall, J.) ["Because such basic information is often known or easily discoverable by each respective parent, there is limited utility in remanding such matters for 'extended family member' inquiry"].)

Lastly, as the prospective adoptive parent, Hailey's paternal grandmother had unique incentives to provide any information about Hailey's paternal background. (*In re S.S.* (2022) 75 Cal.App.5th 875, 882 [Because "[u]nder ICWA, when an Indian child is the subject of . . . adoptive placement proceedings, 'preference shall be given, in the absence of good cause to the

contrary, to a placement with . . . [¶] . . . a member of the Indian child's extended family[,]'" the prospective adoptive parent "ha[s] a strong incentive to bring to the court's attention any facts that suggest that [the prospective adoptee] is an Indian child"].) The fact that the paternal grandmother never provided any information that could suggest that Hailey or her father were tribal members strengthens our conclusion that DCFS's error to conduct a proper inquiry was harmless.

Accordingly, we conclude that "it is reasonably probable that the juvenile court would have made the same ICWA finding" even if it had conducted proper initial inquiries with mother or with Hailey's extended relatives. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


9