Filed 2/1/23  In re M.S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | B319126 (Los Angeles County Super. Ct. No. 19CCJP06320A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.R.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Following the termination of parental rights over her daughter, M.S. (born July 2017), A.R. (mother) filed the instant appeal. She alleges that both the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with their initial inquiry duties under the Indian Child Welfare Act (ICWA) and related California law. Because the juvenile court did not commit reversible error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

This case is neither mother nor M.S.'s first time in a dependency court. Mother and her husband, Jared S. (father), have a long history of mutual substance abuse issues and domestic violence. For much of M.S.'s young life, the family did not have stable housing, instead moving back and forth between various relatives' homes in California and Arizona.

From May 2018 until June 2019, M.S. was a dependent of the Arizona court system because both mother and father had

---

[1] Because ICWA error is the only issue raised in this appeal, this summary of the factual and procedural background focuses on matters related to ICWA compliance. (*In re I.B.* (2015) 239 Cal.App.4th 367, 370.)

issues with substance abuse and domestic violence.  Both parents eventually reunified with M.S., prompting the Arizona court to close the case.

But three months later, the family had relocated to California and once again found itself caught up in dependency court.  On September 25, 2019, the juvenile court removed M.S. from her parents' custody, placing her with her maternal great aunt.

A few days later, the juvenile court detained M.S.  The detention report included ICWA-101(A) inquiry forms signed by both parents, who each denied any Native American ancestry. Both parents and multiple relatives, including the paternal step-grandmother, paternal grandmother, and paternal step-grandmother, attended the hearing; the juvenile court did not inquire with any of these persons regarding possible Indian ancestry.  Instead, the court simply stated that there were "no American-Indian heritage issues . . . [s]o that need not be further investigated between now and the next date."

On September 27, 2019, DCFS filed a petition asking the juvenile court to assert jurisdiction over M.S. pursuant to section 300 of the Welfare and Institutions Code[2] due to mother and father's ongoing substance abuse and domestic violence.  Mother and father eventually pled no contest to an amended petition, including three allegations against mother for her substance abuse and domestic violence.

While the dependency court worked out potential jurisdictional issues regarding the parents' intermittent Arizona residence, Arizona Child Protective Services (Arizona CPS)

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

provided the court with its own ICWA reports; in September 2018, Arizona CPS reported that it had sent notices to the Apache tribe, but the agency ultimately concluded in May 2019 that ICWA did not apply.

DCFS' jurisdiction report stated that "[t]he [ICWA] does not apply," and reported that mother and father had again "denied any Native American ancestry" when DCFS inquired with them in November 2019. Despite noting the presence of many extended relatives in this and subsequent reports, including M.S.'s two maternal great grandmothers, maternal grandparents, maternal aunt, paternal grandparents, and paternal step-grandmother, DCFS did not report asking any of these family members about possible Native American ancestry.

On December 26, 2019, the juvenile court sustained the petition as amended and assumed jurisdiction over M.S.

On September 17, 2020, DCFS found that ICWA did not apply to the case.

After multiple continuances due to the COVID-19 pandemic, the juvenile court terminated family reunification services and set a section 366.26 hearing. Several more continuances ensued before the juvenile court finally terminated parental rights on March 14, 2022.

Mother timely appealed.

**DISCUSSION**

**I.      Relevant Law and Standard of Review**

      A.      *ICWA*

      "ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement' [citation], and 'to promote the stability and security of Indian tribes and families by establishing . . . standards that a state court . . . must follow before removing an Indian child from his or her family' [citations]."[3] (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 780, review granted Sept. 8, 2022, S275578 (*Dezi C.*).)

      Under California law enacted to implement ICWA, DCFS and the juvenile court have "three distinct duties . . . in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)  The first is the initial duty of inquiry, which DCFS "discharges . . . chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.' ([§ 224.2], subd. (b).)  This includes inquiring of not only the child's parents, but also others, including but not limited to, 'extended family members.'  (*Ibid.*)  For its part, the juvenile court is required, '[a]t the first appearance' in a dependency case, to 'ask each participant' 'present' 'whether the participant knows or has reason to know that the child is an Indian child.'  (*Id.*, subd. (c).)"  (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 780; see also Cal. Rules of Court,

_____

[3]      An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]"  (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition].)

rule 5.481(a)(1)-(2).) The second duty—the duty of further inquiry—is triggered if there is "reason to believe that an Indian child is involved" (§ 224.2, subd. (e)), while the third duty—to notify the relevant tribes—is triggered if there is "reason to know . . . that an Indian child is involved" (§ 224.3, subd. (a)).[4]

A spate of appellate courts has recently weighed in on the consequence of a social services agency's failure to conduct the required initial ICWA inquiry, resulting in "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; see also *Dezi C., supra*, 79 Cal.App.5th at pp. 777–778.) Our Division has adopted the following rule: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Dezi C., supra*, at p. 779.)

B. *Standard of Review*

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. [Citation.]" (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.) "Where, as here, there is no doubt that the Department's inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that

---

[4] Here, mother only challenges compliance with the initial duty of inquiry, so the duties of further inquiry and notice are not at issue.

6

error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## II.    Analysis

Mother identifies two ICWA inquiry errors.  First, she asserts that the juvenile court failed to ask her or father about any potential Indian heritage when they appeared in court, beginning with the September 2019 detention hearing.  Second, she argues that DCFS failed to make inquiries with any of the numerous extended family members present at various times during the dependency proceeding.  DCFS concedes that these were errors.

The parties diverge on the effect of these errors, with mother arguing that the errors were substantial and DCFS contending that they were harmless.

We agree with DCFS.  Applying the "'reason to believe' rule" that we adopted in *Dezi C.*, *supra*, 79 Cal.App.5th at page 779, we conclude that the juvenile court and DCFS's failure to make the requisite inquiries of the parents and extended family members was harmless because the record does not suggest a reason to believe that M.S. is an Indian child within the meaning of ICWA.

Mother and father both repeatedly reported that they had no known Indian ancestry, and nothing in the record suggests that either parent was adopted such that "their self-reporting of 'no heritage' may not be fully informed [citation]." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779; contra *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [a mother's denial of Indian heritage was unreliable because she was adopted at a young age and had no

7

contact with her biological parents].) Indeed, mother and father appeared to have ongoing relationships with their parents, grandparents and/or siblings throughout these proceedings. Mother also makes no proffer on appeal that she or father have any Indian heritage. (See *Dezi C.*, at pp. 779, fn. 4, 786.)

Our analysis is underscored by ICWA itself, which narrowly defines "Indian child" to include only a child who is herself or whose parent is a current member of a federally recognized Indian tribe. (§ 224.1, subd. (b).) We doubt that M.S.'s extended relatives, if asked, would have been able to provide any different information about whether M.S., her mother, or her father were current tribal members—particularly in the absence of any contrary suggestion from mother, either before the juvenile court or on appeal. (See *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1023 (dis. opn. of Crandall, J.) ["Because such basic information is often known or easily discoverable by each respective parent, there is limited utility in remanding such matters for 'extended family member' inquiry"].)

Mother argues that the record does suggest reasons to believe that M.S. is an Indian child, because while M.S. was a dependent in Arizona, the Arizona CPS reportedly sent ICWA notices to the Apache tribe, indicating that one of M.S.'s relatives had provided a reason to know that M.S. may be an Indian child. But although Arizona CPS did send notices to the Apache tribe, it later concluded that ICWA did not apply.[5] Viewed in their entirety, and particularly in context of a trial and appellate

---

[5] Mother speculates that this finding was due to M.S. being placed back into her parents' custody in March 2018, not because the Apache tribe disclaimed M.S. However, the Arizona CPS report does not so specify.

8

record bereft of any assertion of potential Indian ancestry from M.S.'s parents, the Arizona CPS reports do not suggest a reason to know that M.S. may be an Indian child within the meaning of ICWA.

Mother also notes that when she and father moved with M.S. to Arizona, the family once lived two and a half hours outside of an Apache tribal reservation. Mother does not assert that she and the family lived there because of its proximity to the reservation, or because either she or father had any relatives associated with the tribe. This barebones connection based solely on the family's occasional geographic proximity to an Apache reservation—assuming arguendo that a two and half hour drive from the reservation's border could be considered proximate—is even more tenuous evidence of potential Indian ancestry than the closed Arizona CPS investigation.

Accordingly, we conclude that "it is reasonably probable that the juvenile court would have made the same ICWA finding" even if it and DCFS had conducted proper initial inquiries with M.S.'s parents or extended relatives. (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## DISPOSITION

The juvenile court's order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

10