Filed 3/1/24  In re Nasir B. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re NASIR B., a Person Coming Under the Juvenile Court Law. | B328283 (Los Angeles County Super. Ct. No. 19CCJP01759A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.B., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Charles Q. Clay III, Judge.  Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

C.B. (mother) appeals from the juvenile court's order terminating her parental rights over her son, Nasir B. (born Jan. 2019).[1] She alleges that both the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with the duty of further inquiry under the Indian Child Welfare Act (25 U.S.C. § 1900 et seq.) (ICWA) and related California law. Finding no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[2]**

During DCFS's initial investigation into the family in March 2019, mother filled out a Parental Notification of Indian Status form (ICWA-020) stating that she is "or may be a member of, or eligible for membership, in a federally recognized Indian tribe" because her paternal grandmother (great-grandmother) was Choctaw. She provided a phone number for her father (grandfather).

At the detention hearing, mother reported that great-grandmother was deceased and that she could not provide her

---

[1]     Nasir's father is not a part of this appeal.

[2]     Because ICWA error is the only issue raised in this appeal, this summary of the factual and procedural background focuses on matters related to ICWA compliance. (*In re I.B.* (2015) 239 Cal.App.4th 367, 370.)

2

date of birth.  The juvenile court ordered DCFS to contact grandfather "and inquire whether he has birth date information and further information regarding [great-]grandmother's possible Choctaw nation heritage."  It then instructed DCFS "to notice the Choctaw nation[.]"

At the jurisdiction and disposition hearing on May 1, 2019, DCFS reported that it had not been able to reach grandfather.  Mother provided the name and phone number of her paternal aunt (great-aunt).  The juvenile court again ordered DCFS "to notice the Choctaw Nation[,]" "and after[wards] to interview with . . . [great-]aunt if further information is provided to follow through on that."

That same day, DCFS sent notices to the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw Indians, and the Jena Band of Choctaw Indians.  The notices included Nasir's name and birthdate; mother's name, birthdate, and address; and the names of both maternal grandparents.  The notices did not include great-grandmother's name.[3]

DCFS reported that the information in the notices came from Nasir's caretaker, who was a family friend.  At the time, great-aunt had not returned DCFS's calls, and grandfather "stated [that] he would not give [DCFS] any information[.]"  The juvenile court ordered DCFS "to make further phonecall[s]" to both grandfather and great-aunt.[4]

---

[3] All three tribes sent return letters stating that they did not consider Nasir to be an Indian child within the meaning of ICWA.

[4] The relevant minute order states that DCFS is to further inquire of great-grandmother; in the reporter's transcript for this hearing, the juvenile court refers to this relative only by her last name.  Since great-grandmother and great-aunt share the same last name, and since the juvenile court had already been

3

On July 22, 2019, DCFS contacted great-aunt. She confirmed that great-grandmother was deceased, and "stated that she did not have any additional information regarding the famil[y's] Indian heritage."

Nine days later, the juvenile court found that the "ICWA is not applicable" because "at this time, based on the information the court has, the court has no reason to know that [Nasir] is an Indian child[.]"

In June 2022, DCFS reinterviewed great-aunt and Nasir's caretaker. Great-aunt said that "the family has no Indian heritage[,]" and Nasir's caretaker reported that "she has never heard any indication that there was American Indian heritage."

In March 2023, the juvenile court terminated mother's parental rights over Nasir. Mother timely appealed.

## DISCUSSION

### I.  Applicable Law

"ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement' [citation], and 'to promote the stability and security of Indian tribes and families by establishing . . . standards that a state court . . . must follow before removing an Indian child from his or her family' [citations]."[5] (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 780, review granted Sept. 21, 2022, S275578 (*Dezi C.*).)

---

informed that great-grandmother was deceased, we presume that the court's order referred to great-aunt.

[5]     ICWA defines an "Indian child" as any unmarried person under the age of 18 who is (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

4

Under California law enacted to implement ICWA, DCFS and the juvenile court have "three distinct duties . . . in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) The first is the initial duty of inquiry, which DCFS "discharges . . . chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.' ([§ 224.2], subd. (b).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 780.)

If the initial inquiry yields a "reason to believe [a] . . . child is involved in a proceeding . . . is an Indian child[,]" the juvenile court must order DCFS to make further inquiry into the child's potential Indian status. (Welf. & Inst. Code, § 224.2, subd. (e).)[6] "There is reason to believe a child [may be] an Indian child whenever the court . . . has information suggesting that either the parent . . . or the child is a member or may be eligible for membership in an Indian tribe." (*Ibid.*)

To satisfy the duty of further inquiry, DCFS must, among other things, "[i]nterview[] the parents . . . and extended family members to gather . . . [relevant] information[,]" (§ 224.2, subd. (e)(2)(A)) including, among other things, the "birth dates" and "any other identifying information" of the child's "great-grandparents" (§ 224.3, subd. (a)(5)(C)).

The third duty—to notify the relevant Indian tribes—is triggered only if, after the prior rounds of inquiry, DCFS "or the [juvenile] court 'knows or has reason to know . . . that an Indian child is involved.' (§ 224.3, subd. (a).)" (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 781.) Notices must include, among other things, "[a]ll names known of the Indian child's . . . great-

---

[6] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

5

grandparents . . . as well as their . . . birth dates[.]" (§ 224.3, subd. (a)(5)(C).)

## II. Standard of Review

"'[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports' the court's ICWA finding." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.) Even if substantial evidence does not support the juvenile court's ICWA findings, we may not reverse unless we find that error was prejudicial. (Cal. Const., art. VI, § 13; *Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)

## III. Analysis

Mother argues that DCFS and the juvenile court failed to satisfy ICWA's duty of further inquiry by failing to ask great-aunt about great-grandmother's birth and death dates. In rebuttal, DCFS contends that the duty of further inquiry was not triggered because there was no reason to believe that Nasir is or may be an Indian child.

Contrary to DCFS's arguments, mother's assertion of Choctaw heritage met the "reason to believe" standard. The Legislature has made clear that there is reason to believe a minor is an Indian child when there is specific information suggesting that either a child or parent "may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Mother's claim of Choctaw ancestry could suggest eligibility for tribal membership. (See *In re T.G.* (2020) 58 Cal.App.5th 275, 294 ["To be sure, an 'Indian child' is defined in terms of tribal membership, not ancestry. But the question of membership is determined by the tribes, not the courts or child protective agencies . . . . That determination often requires providing a tribe with extensive biographical data (that is, information about ancestors and

6

ancestry)"].) Thus, the juvenile court appropriately ordered DCFS to make further inquiries with mother's relatives.

The sole error that mother identifies in DCFS's further inquiry is its failure to ask great-aunt for biographical information about great-grandmother. But neither the ICWA nor the juvenile court's order compelled DCFS to collect such data from great-aunt. ICWA (and the state laws implementing it) do not include a great-aunt among the "'extended family member[s]'" that must be interviewed in the course of a further inquiry. (See 25 U.S.C. § 1903(2) [defining "'extended family member'" to include a child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) ["'extended family member'" is "defined as provided in [s]ection 1903 of the" ICWA].)

The juvenile court had the authority to order DCFS to go above and beyond these statutory requirements by reaching out to great-aunt. However, unlike in its prior order regarding grandfather, the juvenile court did not direct DCFS to obtain "birth date information and further information regarding [great-]grandmother[]" from great-aunt. It merely instructed DCFS to "interview with . . . [great-]aunt." The record shows that DCFS complied with this order, asking great-aunt multiple times about the family's Indian heritage. Because neither the juvenile court's order nor ICWA itself required DCFS to collect biographical information from great-aunt, the agency's failure to do so does not constitute error.

Mother also argues that the notices DCFS sent to the three Choctaw nations were inadequate because they omitted great-grandmother's name, which mother provided in her ICWA-020 form. But because the juvenile court found that there "[w]as no

7

reason to know that [Nasir] is an Indian child[,]"[7] DCFS had no duty to send those notices in this case. (§§ 224.2, subd. (d) & 224.3, subd. (a); see also *In re W.B.* (2012) 55 Cal.4th 30, 55, fn. 14 [Notice to "tribes is required only if information produced by the initial inquiry gives the court [or] social worker . . . reason to *know* the minor is an Indian child"] (italics added).) We cannot find that DCFS failed to satisfy a statutory duty that it had no obligation to perform.

Finally, mother suggests that DCFS violated the duty of further inquiry by sending defective formal notices. However, the requirements for formal notice are not the same as those for the comparatively informal contact with tribes that can satisfy the duty of further inquiry. The duty of further inquiry does include "[c]ontacting the tribe or tribes . . . [and] sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).) But the formal notices DCFS issued in this case (which the trial court ordered before it made any ICWA findings do not resemble the "telephone, facsimile, or electronic mail contact to [a] tribe's designated agent for receipt of [ICWA] notices" contemplated by the further inquiry statute. Mother cites (and we have found) no authorities holding that defective formal notices violate this provision of the ICWA or the state laws implementing it.[8] (*In re Daniel M.* (2003) 110 Cal.App.4th 703,

---

[7] Mother does not challenge this finding, so we have no occasion to review it.

[8] In her reply brief, mother briefly argues that any general "failure to provide known information when there is a reason to believe[] is universally acknowledged to be prejudicial [error]" but the cases she cites for this proposition are inapposite. (*In re K.H.* (2022) 84 Cal.App.5th 566, 620 [finding DCFS failed to satisfy the

8

708 ["'[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived.' [Citation.]"].)

Under these circumstances, we conclude that DCFS did not err in failing to include great-grandmother's name in the notices sent to the three Choctaw tribes.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

_____

duty of initial inquiry because it did not interview "numerous maternal and paternal relatives[,]" including the child's grandparents]; *Dezi C.*, *supra*, 79 Cal.App.5th at p. 778 [discussing the typical difficulties in assessing the prejudice of an initial inquiry error].)

9